UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAKE RATCHES, | : | Case No. 3:24-CV-1319 (SVN) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| TONY GUERRERA, *et al.*, | : | |
| *Defendants*. | : | May 15, 2025 |

**ORDER ON MOTIONS FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Plaintiff Jake Ratches filed this action while housed as an unsentenced inmate in the custody of the Department of Correction ("DOC") at Hartford Correctional Center ("HCC").[1] Compl., ECF No. 1. He asserts claims of constitutional violation under 42 U.S.C. § 1983 against Connecticut Department of Motor Vehicles ("DMV") Commissioner Tony Guerrera and Governor Ned Lamont. *Id.*; Am. Compl., ECF No. 44. Specifically, Plaintiff alleges that his driver's license was suspended after his arrest for driving under the influence ("DUI") on November 25, 2018, and that he is still subject to a driver's license suspension despite dismissal of his charges. *See* ECF No. 44 at 2–3.

Plaintiff is proceeding against Defendants in their official capacities to remedy alleged ongoing violations of his rights under the Fourteenth Amendment Due Process Clause, the Fifth Amendment Double Jeopardy Clause, and, potentially, the Eighth Amendment Excessive Fines Clause. *See* Initial Review Orders, ECF Nos. 24 & 44.

Plaintiff moved for both a preliminary injunction, ECF No. 31, and a temporary restraining order, ECF No. 35. After Defendants filed an objection to these motions, ECF No. 37, and Plaintiff

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The DOC website shows that Plaintiff was born on May 26, 1999, is unsentenced, and was admitted to DOC custody on October 10, 2023. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=423413 (last visited May 12, 2025).

filed a reply, ECF No. 39, the Court ordered Defendants to file a surreply to address the following issues:

> (1) whether Plaintiff's assertion that a grace period for his license renewal will expire in May of 2025, and that he cannot renew his license without proof of installation of an ignition interlock device, which he cannot install while incarcerated, constitutes irreparable harm; (2) whether Plaintiff has shown a likelihood of success on the merits of his Fifth Amendment double jeopardy and Eighth Amendment excessive fines claims, which are not addressed in Defendants' opposition briefing.  On the latter issue, Defendants must address Plaintiff's contention that the requirement that Plaintiff install an ignition interlock device in order to renew his license, when he was "exonerated" of the driving under the influence charge, is unconstitutional.

Order, ECF No. 43.  Defendants have now filed their surreply, ECF No. 46, and Plaintiff has filed an additional response, ECF No. 47.

The Court concludes that Plaintiff's motions for a temporary restraining order and preliminary injunction must be DENIED.

## I.     RELEVANT STATUTORY BACKGROUND

As this case involves a suspension of Plaintiff's motor vehicle license under the Connecticut General Statutes, the state statutory procedures for a motor vehicle license suspension are relevant to Plaintiff's claims for injunctive relief.  Thus, the Court first sets forth the relevant statutory authority.[2]

Connecticut law for suspension for DUI is governed primarily by two statutes:  Connecticut General Statutes §§ 14-227a and 14-227b.  Under section 14-227a, a motor vehicle operator is prohibited from driving while under the influence of alcohol or drugs or with an elevated blood alcohol content.  *See* Conn. Gen. Stat. § 14-227a(a) (2016) (effective Oct. 1, 2016, to Mar. 31, 2022).

---

[2] Where relevant, the Court relies on the version of the statute in effect when Plaintiff was arrested in 2018.  *See, e.g.*, Conn. Gen. Stat. § 14-227b (2016) (effective Oct. 1, 2016, to June 30, 2021).

Under section 14-227b(a), a motor vehicle operator "in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine." *Id.* § 14-227b(a).

Section 14-227b(c)–(g) provides for an administrative procedure for license suspensions for DUI motorists. If a person is arrested after a test indicates "an elevated blood alcohol content," the police officer, "acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license" and prepare and send "the report and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles." *Id.* § 14-227b(c).

After receiving the police information, the DMV Commissioner may suspend any operator's license as of a date certain, which date "shall be not later than thirty days after the date such person received notice" of their arrest. *Id.* § 14-227b(e)(1). The DMV Commissioner "shall send a suspension notice to such person informing such person that such person's operator's license or nonresident operating privilege is suspended as of a date certain and that such person is entitled to a hearing prior to the effective date of the suspension and may schedule such hearing by contacting the Department of Motor Vehicles not later than seven days after the date of mailing of such suspension notice." *Id.*

Thus, once the DMV receives information of a motor vehicle operator driving under the influence, it may suspend the individual's license, pending an opportunity to be heard by way of an administrative hearing pursuant to Connecticut General Statutes § 14-227b(g). If the motor vehicle operator "does not contact the department to schedule a hearing, the commissioner shall affirm the suspension contained in the suspension notice for the appropriate period specified in subsection (i) of this section." *Id.* § 14-227b(f); *see also id.* § 14-227b(i)(1) ("The commissioner

3

shall suspend the operator's license or nonresident operating privilege of a person who did not contact the department to schedule a hearing, who failed to appear at a hearing, or against whom a decision was issued, after a hearing, pursuant to subsection (h) of this section, as of the effective date contained in the suspension notice, for a period of forty-five days.").

Connecticut General Statutes § 14-227b(i)(1) mandates that, "[a]s a condition for the restoration of such operator's license or nonresident operating privilege, such person shall be required to install an ignition interlock device on each motor vehicle owned or operated by such person and, upon such restoration, be prohibited from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device" for a prescribed period.[3]  *Id.*

Under Connecticut General Statutes § 4-183(a), a motor vehicle driver subject to "final decision" from the DMV Commissioner has a right to appeal.[4]

## II.    FACTUAL BACKGROUND

Defendants have submitted a copy of a Suspension Notice dated November 29, 2018, showing that Plaintiff's motor vehicle operator's license was suspended after he failed a chemical alcohol test.  ECF No. 37-1.  Plaintiff does not challenge the authenticity of this document.  At the time of his arrest, Plaintiff was nineteen years old.[5]

The Notice stated:

> In accordance with Connecticut General Statutes and Regulations of the Department of Motor Vehicles[,] you are hereby notified that your

---

[3] Relevant to this case, Connecticut General Statutes § 14-227b(i)(2)(B) provides that "a person under twenty-one years of age at the time of the arrest who submitted to a test or analysis and the results of such test or analysis indicated that such person had an elevated blood alcohol content shall install and maintain an ignition interlock device" for one year for their first suspension under this section.
[4] Connecticut General Statutes § 4-183(a) provides in relevant part:  "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section."
[5] As noted, the Court takes judicial notice of the publicly available information on the DOC website showing Plaintiff's birthdate as May 26, 1999.  https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=423413.

> operator's license or privilege is suspended[.]  This action is separate and distinct from any case which you may have pending in Superior Court[.]
>
> Prior to the effective date of the suspension, you are entitled to request an administrative hearing[.]  A request for a hearing must be received by the Department of Vehicles no later than seven (7) days from the date of this notice[.]  If we do not receive a request by close of business on the final date specified below[,] your suspension will go into effect on the date indicated below[.]
>
> You must not operate any motor vehicle in Connecticut from the effective date of suspension until you obtain a restoration notice for such suspension[.]

*Id.*  The Notice provided that Plaintiff's final date to request a hearing was December 6, 2018, and the effective date of the suspension was December 25, 2018.  *Id.*  It provided further that the duration of the license suspension was forty-five days and explained:

> If you are eligible to be restored after your suspension, you will be required to install and maintain an ignition interlock device in every vehicle you own or operate for a period of 1 Year or for a longer period in the event you are convicted of Connecticut General Statute 14-227a Operation while under the influence of liquor or drug or while having an elevated blood alcohol content.

*Id.*  Plaintiff's suspension went into effect on December 25, 2018.

The parties do not dispute that Plaintiff's DUI charge was dismissed.  Plaintiff has attached a copy of the Connecticut Superior Court docket for his DUI arrest on November 25, 2018, showing that his case was disposed of on March 2, 2022, as a "Non-Disclosable Nolle."[6]  ECF No. 44 at 5–7.  Plaintiff maintains that the statutory ignition interlock device requirement for his license

---

[6] A *nolle prosequi* is a "unilateral act by a prosecutor, which ends the pending proceedings without an acquittal and without placing the defendant in jeopardy." *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (citation omitted).  Under Connecticut law, a *nolle prosequi* terminates the prosecution, but the prosecuting authority is permitted to initiate a new action against the defendant within the statute of limitations.  Conn. Prac. Book § 39-31 (2025).  A *nolle prosequi* may not be entered if the accused objects and demands either a trial or dismissal.  Conn. Gen. Stat. § 54-56b.  Criminal charges that have been *nolled* are erased thirteen months after entry of the *nolle prosequi*.  *Id.* § 54-142a(c).

renewal is being wrongly applied to him after dismissal of his DUI charges. Pl.'s Reply, ECF No. 39 at 1–3; Pl.'s Response, ECF No. 47 at 2–3.

The parties dispute whether Plaintiff failed to send a request for a hearing within the relevant time frame provided under the Notice, and the number of times Plaintiff sent a hearing request to the DMV. *See* Defs.' Obj. at 8, ECF No. 37 at 8 (noting the DMV denied requests for reconsideration dated January 11, 2019, and February 10, 2020); Pl.'s Reply at 1, 3, 5 (noting that Plaintiff had requested hearings "hundreds of times" since 2018, all of which have been rejected). Plaintiff also claims that he never failed a blood alcohol content test and never received the Suspension Notice. Pl.'s Reply at 1.

Under Connecticut General Statutes § 14-36(e)(3) (2025), an applicant who has not renewed their driver's license within the two-year period after the license expiration date must take a driver's license test.[7] Here, the parties agree that Plaintiff's license expired in May of 2023. Defs.' Surreply, ECF No. 46 at 2 (noting Plaintiff's license expired on May 26, 2023); Pl.'s Reply at 2 (noting his two-year license renewal period ends in May of 2025).

## III. LEGAL STANDARD

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consolidated Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The same standard applies for analyzing a motion for a temporary restraining order and a motion for a preliminary injunction. *Stoneway Cap. Corp. v. Siemens Energy Inc.*, No. 19 Civ.

---

[7] The statute at the time of Plaintiff's arrest provided that an applicant who has not operated a motor vehicle during the preceding two years, rather than an applicant who has not renewed their license within two years after its expiration, must take a driver's license test. *See* Conn. Gen. Stat. § 14-36(e)(3) (2017) (effective Oct. 1, 2017, to June 30, 2021).

11355 (GBD) (SLC), 2020 WL 764457, at *1 (S.D.N.Y. Feb. 14, 2020). A movant must establish "(1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (cleaned up).

In cases where a plaintiff seeks a mandatory injunction rather than a prohibitory one—requiring the defendant to take some action, rather than refrain from taking some action—"the likelihood-of-success and irreparable-harm requirements become more demanding still." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024). In those cases, the plaintiff must "show a *clear or substantial* likelihood of success on the merits and make a *strong showing* of irreparable harm." *Id.* (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)).

In addition, to "prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Vega v. Lantz*, No. 3:04-cv-1215 (DFM), 2006 WL 2642416, at *2 (D. Conn. Sept. 14, 2006); *see also Taylor v. Rowland*, No. 3:02-cv-229 (DJS) (TPS), 2004 WL 231453, at *2–3 (D. Conn. Feb. 2, 2004) (concluding that a motion for preliminary injunctive relief was not proper because it was "unrelated to the issues in the amended complaint").

A federal court may, but is not required to, hold a hearing on a motion for preliminary injunction, but hearings are not required in all cases. *See Drywall Tapers & Pointers of Greater N.Y., Loc. 1974 of I.B.P.A.T., AFL–CIO v. Loc. 530 of Operative Plasterers & Cement Masons*

7

*Int'l Ass'n*, 954 F.2d 69, 76–77 (2d Cir. 1992). "[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." *Md. Cas. Co. v. Realty Advisory Bd. on Lab. Relations*, 107 F.3d 979, 984 (2d Cir. 1997). If the record before the court demonstrates no factual dispute to be resolved by an evidentiary hearing, the court may grant or deny the motion without hearing oral testimony. *Lopez v. McEwan*, No. 3:08-CV-678 (JCH), 2009 WL 179815, at *1 (D. Conn. Jan. 23, 2009) (cleaned up).

## IV.  DISCUSSION

After review of the record, the Court concludes that there are no material facts in dispute and that neither oral testimony nor argument would assist in the Court's understanding of the factual record or the relevant legal principles. *See Stiggle v. Arnone*, No. 3:13-CV-00238 (JAM), 2014 WL 4230919, at *1 n.3 (D. Conn. Aug. 26, 2014). Accordingly, the Court resolves Plaintiff's motions for a temporary restraining order and for a preliminary injunction, which request that the Court lift his license suspension and ignition interlock requirement, without a hearing.

The Court agrees with Defendants that Plaintiff has not demonstrated either that (1) he will be subject to irreparable harm if the relief is not afforded to him or (2) a likelihood that he can prevail on the merits of his Fourteenth, Fifth, or Eighth Amendment claims. Nor does issuance of the requested injunctive relief serve the public's interest. The Court therefore denies Plaintiff's motions.

### A.  Irreparable Harm

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024); *see also Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)

(*per curiam*) (noting that "[i]n the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied").  To satisfy the irreparable harm requirement, Plaintiff must demonstrate that he "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *State Farm*, 120 F.4th at 80.  And "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended" are not sufficient to establish irreparable harm.  *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  Furthermore, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm."  *Id.* (citing *Sampson*, 415 U.S. at 90).

Additionally, a party's delay in seeking injunctive relief may defeat any presumption of irreparable injury.  *See Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005).  As the Second Circuit has noted, preliminary injunctive relief is "generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights.  Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action."  *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276–77 (2d Cir. 1985) (a party's "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury"); *Goldstein v. Hochul*, No. 22-CV-8300 (VSB), 2022 WL 20305832, at *2 (S.D.N.Y. Oct. 3, 2022) (assessing delay in case alleging violation of constitutional rights).

Here, Plaintiff has not demonstrated irreparable harm.  Plaintiff complains he cannot renew his driver's license unless he installs the ignition interlock device, and he will not be able to renew his license within the two-year time period that ends in May of 2025 because he cannot meet the

9

DMV's requirements, in part because he is presently incarcerated. But this does not amount to irreparable harm.

Plaintiff will not be left without a remedy should his license expire after the two-year renewal period. Under Connecticut General Statutes § 14-36(e)(3), Plaintiff may renew his license after its expiration by taking a driving test; his lack of a license is, therefore, reparable. And under § 14-227b(i), Plaintiff will lawfully remain subject to the mandatory ignition interlock requirement. The fact that his criminal DUI charges were dismissed after entry of a *nolle prosequi* does not compromise the validity of the DMV's suspension or requirement for the ignition interlock device. The administrative suspension by the DMV is independent from the criminal prosecution for a DUI violation. *See Volck v. Muzio*, 204 Conn. 507, 515 (1987) (noting statutory amendments indicate the intent of legislature to make the administrative license suspension "independent of the outcome of the trial of the charge of operating under the influence"); *see also State v. Burnell*, 290 Conn. 634, 642, 649 (2009) (noting that legislative history to § 14-227b "makes clear the legislature's continued understanding that an administrative suspension does not foreclose criminal proceedings for a violation of § 14-227a")

Thus, Plaintiff has demonstrated at most that he may be injured as to his time, energy, and monetary interests. Neither Plaintiff's inability to renew his license prior to its expiration in May of 2025 nor the requirement for him to install the ignition interlock system prior to renewal constitute an irreparable injury to support this Court granting him the drastic remedy of injunctive relief.

In addition, the record reflects that Plaintiff is not newly aware that his license was suspended in December 2018 with a requirement for an ignition interlock device, as he filed requests for a hearing after his suspension. Nor has he shown that he could not have known that

his license will expire in May of 2025. Although Plaintiff's *nolle* for his DUI prosecution was entered on March 2, 2022, Plaintiff waited until August 15, 2024, to commence this action to challenge his suspension and ignition interlock device requirement on grounds that his DUI charges were dismissed. Plaintiff's delayed action to seek relief for the asserted constitutional violations arising from his driver's license suspension also supports the Court's conclusion that he is not subject to any imminent irreparable harm.

As the Court has found that Plaintiff has not established irreparable harm, his motions for injunctive relief are denied. For purposes of completeness, however, the Court will address the remaining requirements for injunctive relief.

### B. Likelihood of Success on the Merits

Plaintiff has not made a clear showing that he has a likelihood to prevail on the merits of his claims under the Fourteenth Amendment, Fifth Amendment, or Eighth Amendment.

#### 1. Fourteenth Amendment Due Process

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property. U.S Const. amend. XIV. To allege a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the state has deprived him of *that* right, and third show that the deprivation was effected without due process." *Loc. 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994).

A procedural due process claim has two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). In general, under the Due Process Clause "individuals must receive notice and an opportunity to be heard before the Government deprives

11

them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). Notice is reasonable if it is "calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). To determine whether a constitutional violation has occurred, the court must consider the process provided by the state and determine whether that process was constitutionally adequate. *See Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

Here, the State of Connecticut has provided a statutory scheme to afford due process for suspending a driver's license due to an arrest for driving under influence. *See Huang Do v. Comm'r of Motor Vehicles*, 330 Conn. 651, 679 (2019) (noting § 14-277b license suspension is not a criminal proceeding and the statute's legislative history reveals its purpose to protect the public with "all dispatch compatible with due process"). Under Connecticut law, Plaintiff had an opportunity for an administrative hearing under § 14-227b(g) and to take an appeal under § 4-183 for judicial review of the DMV licensing suspension.[8] *See State v. Hickam*, 235 Conn. 614, 627 (1995) ("[T]he legislature has simply provided to a driver who has been arrested the opportunity to contest the loss of his or her license, while retaining operating privileges until a final determination on an extended suspension can be made after a hearing. The short period of retention of driving privileges pending a hearing was obviously intended to eliminate any possible due process concerns."), *overruled on other grounds by State v. Crawford*, 257 Conn. 769 (2001).

---

[8] "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable" and "[s]ubstantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." *Schallenkamp v. DelPonte*, 229 Conn. 31, 39 (1994).

Connecticut's statutory procedural scheme—providing for notice, a hearing, and an opportunity to appeal—strongly suggests that Plaintiff will not prevail on the merits of his Fourteenth Amendment claim of a procedural due process violation. *See Torres v. Town of Bristol*, No. 3:13-CV-1335 (SRU), 2015 WL 1442722, at *9 (D. Conn. Mar. 27, 2015) (finding plaintiff did not demonstrate state civil statutory forfeiture procedures of notice and asset forfeiture hearing under Connecticut General Statutes § 54-36h and the right to appeal were not sufficient to satisfy due process). Accordingly, the Court concludes Plaintiff is not entitled to injunctive relief related to an alleged Fourteenth Amendment violation.

### 2. *Fifth Amendment Double Jeopardy*

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." *See* U.S. Const. amend. V. The Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishments for the same offense, . . . and then only when such occurs in successive proceedings." *Hudson v. United States*, 522 U.S. 93, 99 (1997) (internal citations omitted). But the relevant jeopardy "is not present in proceedings that are not essentially criminal," *Breed v. Jones*, 421 U.S. 519, 528 (1975) (citation omitted), and "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended," *United States v. Khalil*, 214 F.3d 111, 117 (2d Cir. 2000) (citations omitted).

Relevant to this action, the Connecticut Supreme Court has ruled that an administrative suspension under § 14-227b is a civil proceeding for a remedial purpose that does not serve as a criminal conviction to implicate the protection against double jeopardy. *Burnell*, 290 Conn. at 641–42, 645–46 ("[W]e conclude that an administrative license suspension proceeding is not a criminal prosecution that gives rise to a conviction for double jeopardy purposes."); *Fishbein v.*

*Kozlowski*, 252 Conn. 38, 49 (1999) (noting the Connecticut Supreme Court has "indicated repeatedly that a license suspension hearing is not a criminal proceeding and that the subject of such a hearing is not entitled to all of the procedural protections that would be available in a criminal proceeding"); *Hickam*, 235 Conn. at 624–28 (concluding after review of legislative history that § 14-227b has a remedial rather than a punitive purpose and criminal prosecution under § 14-227a(a) is not barred under Fifth Amendment protection from double jeopardy).

As it is clear under Connecticut law that Plaintiff is not subject to the harm of double jeopardy, the Fifth Amendment does not support Plaintiff's claim for injunctive relief. Because the Court concludes the Fifth Amendment Double Jeopardy Clause does not apply to this action, it will dismiss Plaintiff's Fifth Amendment claim as not plausible under 28 U.S.C. § 1915(e)(2)(B)(i)–(ii).[9] *See Ash v. Johnston*, No. 21-1941-PR, 2024 WL 4198647, at *2 (2d Cir. Sept. 16, 2024) (summary order) (affirming dismissal of Fifth Amendment double jeopardy claim in the absence of an "essentially criminal proceeding").

### 3. Eighth Amendment Excessive Fines Clause

Nor is Plaintiff likely to succeed on the merits of his Eighth Amendment excessive fines claim. In *United States v. Bajakajian*, 524 U.S. 321 (1998), the United States Supreme Court established a two-step inquiry to decide "whether a financial penalty is excessive under the Eighth Amendment." *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016). First, the Court must consider whether the payment or forfeiture at issue constitutes a "fine," meaning that it is punitive in nature and not "purely remedial." *Id.* at 109 (citations omitted). If so, the court must determine

---

[9] Under 28 U.S.C. § 1915(e)(2)(B)(i)–(ii), the court may dismiss (at any time) claims that are frivolous or that are not plausible. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000) (noting that dismissal of a frivolous action *sua sponte* is mandatory in cases in which the plaintiff is proceeding *in forma pauperis*).

whether the fine is "grossly disproportional" to the underlying offense. *Id.* at 110 (quoting *Bajakajian*, 524 U.S. at 334).

The Connecticut courts have determined that Connecticut General Statutes § 14-227b is a remedial civil statute intended to provide the DMV Commissioner with civil administrative authority to keep drunk drivers off the road and to prevent further incidents from occurring through license suspensions and ignition interlock device requirements. *See Hickam*, 253 Conn. at 624–25 ("[T]he legislative history of § 14-227b reveals that a principal purpose for the enactment of the statute was to protect the public by removing potentially dangerous drivers from the state's roadways with all dispatch compatible with due process [and] . . . any deterrent purpose manifested by the legislative history of § 14-227b is incidental to its overall remedial purpose of removing from the highways those who have exhibited a propensity to drive while under the influence of alcohol."); *Macci v. Comm'r of Motor Vehicles*, No. HHB-CV-216065931-S, 2022 WL 294329, at *3 (Conn. Super. Ct. Jan. 14, 2022) (noting purpose of § 14-227b provisions for administrative license suspensions and interlock device requirements).

Although the Court's research revealed no case directly on point for an Eighth Amendment excessive fines violation based on the Connecticut statutory ignition interlock device requirement, Connecticut legal precedent strongly suggests that Plaintiff will not prevail on his claim that he is subject to excessive fines in violation of the Eighth Amendment.[10]

    C. <u>Balance of the Hardships and the Public Interest</u>

Finally, in light of the discussion above, it is clear the balance of the hardships and public interest do not favor granting Plaintiff's motions for injunctive relief. "It is well established that states have 'substantial, indeed compelling, governmental interests in public safety and crime

---

[10] Because there does not appear to be any legal decision exactly on point, the Court will permit this claim to proceed for further development through the adversarial process.

prevention.'" *Mintz v. Chiumento*, 724 F. Supp. 3d 40, 66 (N.D.N.Y. 2024) (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 261 (2d Cir. 2015)). As previously discussed, the Connecticut legislature enacted Connecticut General Statutes § 14-227b to protect the public from drivers who demonstrate reckless disregard for the safety of others, "while at the same time providing procedures to afford due process to those that come within its ambit." *See Hickam*, 235 Conn. at 626; *Huang Do*, 330 Conn. at 679 (noting § 14-227b is meant to protect the public "by removing potentially dangerous drivers from the state's roadways with all dispatch compatible with due process" (quoting *Fishbein*, 252 Conn. at 48–49)).

Thus, Plaintiff's injunctive requests, if granted, would present a disservice to the public interest by undermining the state's efforts to protect the public through a remedial statutory requirement for installation of the ignition interlock device. By contrast, Plaintiff has not demonstrated that he will be subject to any imminent irreparable harm by complying with state driver's license requirements. Accordingly, the Court must deny Plaintiff's motions for a temporary restraining order and preliminary injunction.

V. **CONCLUSION**

For the reasons explained in this ruling, Plaintiff's motions for temporary restraining order, ECF No. 35, and preliminary injunction, ECF No. 31, are DENIED. Plaintiff's claim of a violation of the Fifth Amendment Double Jeopardy Clause is dismissed as not plausible under 28 U.S.C. § 1915(e)(2)(B)(i)–(ii).

**SO ORDERED** at Hartford, Connecticut, this 15th day of May, 2025.

/s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE