# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAKE RATCHES, | ) | 3:24-CV-1319 (SVN) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TONY GUERRERA, et al., | ) | |
| *Defendants*. | ) | March 2, 2026 |

### RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS
### AND PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND
### PRELIMINARY INJUNCTION

Plaintiff Jake Ratches, proceeding *pro se*, commenced this action under 42 U.S.C. § 1983 on August 15, 2024, while housed as an unsentenced inmate in the custody of the Department of Correction ("DOC") at Hartford Correctional Center ("HCC").[1]  Plaintiff's initial complaint asserted claims of constitutional violations related to the suspension of his driver's license against the Connecticut Department of Motor Vehicle ("DMV"), Commissioner Tony Guerrera, and Governor Ned Lamont in their official capacities.  Compl., ECF No. 1.

After an initial review of Plaintiff's complaint, the Court permitted Plaintiff to proceed against Defendants in their official capacities on claims brought under the Fourteenth Amendment Due Process Clause, the Fifth Amendment Double Jeopardy Clause, and, potentially, the Eighth Amendment Excessive Fines Clause.  Initial Review Order, ECF No. 24.  Plaintiff then filed an amended complaint as of right.  *See* Am. Compl., ECF No. 44; Order, ECF No. 45.  The Court

---

[1] The Court may "take judicial notice of relevant matters of public record."  *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).  The court previously took judicial notice of information on the DOC website reflecting that Plaintiff was born on May 26, 1999.  *See* ECF No. 52 at 1, n.1.  Plaintiff has since been released from DOC custody.  *See* Order, ECF No. 81; Notice of Change of Address, ECF No. 82.

conducted an initial review of the amended complaint and concluded that Plaintiff could proceed with the same claims it had previously allowed.  Initial Review Order, ECF No. 48.  The Court later denied Plaintiff's motions for a preliminary injunction and temporary restraining order and dismissed Plaintiff's Fifth Amendment Double Jeopardy Clause claim as not plausible under 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).  Order, ECF No. 52.

While Plaintiff's first motions for a preliminary injunction and a temporary restraining order were pending, Defendants filed a motion to dismiss the amended complaint for failure to state any Fourteenth, Fifth and Eighth Amendment claims.  Defs.' Mot. to Dismiss, ECF No. 49. Plaintiff then filed a motion for reconsideration of the Court's ruling on his requests for injunctive relief, which the Court denied.  Order, ECF No. 64.  Subsequently, Plaintiff filed a renewed motion for a temporary restraining order ("TRO") and a preliminary injunction, seeking the immediate restoration of his Connecticut driver's license.  Pl.'s Mot. for TRO & Prelim. Inj., ECF No. 83.

For the following reasons, the Court now grants in part and denies in part Defendants' motion to dismiss.  The Court also denies in full Plaintiff's motion for a preliminary injunction.

## I.    RELEVANT STATUTORY BACKGROUND

As this case involves a suspension of Plaintiff's motor vehicle operation license under the Connecticut General Statutes, the state statutory procedures for motor vehicle license suspension are relevant to Plaintiff's claims.  Thus, the Court first sets forth the relevant statutory authority.[2]

Connecticut law for suspension for driving under the influence ("DUI") is governed primarily by two statutes:  Connecticut General Statutes §§ 14-227a and 14-227b.  Under section 14-227a, a motor vehicle operator is prohibited from driving while under the influence of alcohol

---

[2] Where relevant, the Court relies on the version of the statute in effect when Plaintiff was arrested in 2018.  *See, e.g.*, Conn. Gen. Stat. § 14-227b (2016) (effective Oct. 1, 2016, to June 30, 2021).

or drugs or with an elevated blood alcohol content.  *See* Conn. Gen. Stat. § 14-227a(a) (2016) (effective Oct. 1, 2016, to Mar. 31, 2022).

Under section 14-227b(a), a motor vehicle operator "in this state shall be deemed to have given such person's consent to . . . a chemical test of such person's blood, breath or urine."  *Id.* § 14-227b(a).

Sections 14-227b(c)–(g) provide an administrative procedure for license suspensions for motorists cited for driving while under the influence.  If a person is arrested after a test indicates "an elevated blood alcohol content," the police officer, "acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license" and prepare and send "the report and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles."  *Id.* § 14-227b(c).

After receiving the police information, the DMV Commissioner may suspend any operator's license as of a date certain, which date "shall be not later than thirty days after the date such person received notice" of their arrest.  *Id.* § 14-227b(e)(1).  The DMV Commissioner "shall send a suspension notice to such person informing such person that such person's operator's license or nonresident operating privilege is suspended as of a date certain and that such person is entitled to a hearing prior to the effective date of the suspension and may schedule such hearing by contacting the Department of Motor Vehicles not later than seven days after the date of mailing of such suspension notice."  *Id.*

Thus, once the DMV receives information of a motor vehicle operator driving under the influence, it may suspend the individual's license, pending an opportunity to be heard by way of an administrative hearing pursuant to Connecticut General Statutes § 14-227b(g).  If the motor vehicle operator "does not contact the department to schedule a hearing, the commissioner shall

affirm the suspension contained in the suspension notice for the appropriate period specified in subsection (i) of this section." *Id.* § 14-227b(f); *see also id.* § 14-227b(i)(1) ("The commissioner shall suspend the operator's license or nonresident operating privilege of a person who did not contact the department to schedule a hearing, who failed to appear at a hearing, or against whom a decision was issued, after a hearing, pursuant to subsection (h) of this section, as of the effective date contained in the suspension notice, for a period of forty-five days"). A motor vehicle driver subject to a "final decision" from the DMV Commissioner has a right to appeal. Conn. Gen. Stat. § 4-183(a) ("A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section").

Connecticut law also provides procedures for restoration of operating privileges. Under the current Connecticut General Statutes, "[a]ny person (1) whose operator's license or privilege to operate a motor vehicle in this state has been suspended or revoked by the Commissioner of Motor Vehicles . . . shall pay a restoration fee of one hundred seventy-five dollars to said commissioner prior to the issuance to such person of a new operator's license or identity card." Conn. Gen. Stat. § 14-50b (2025). Section 14-227b(i)(1) mandates installation of an ignition interlock device "[a]s a condition for the restoration" of a driver's license; upon restoration of the driver's license, the operator is "prohibited from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device" for the period of time prescribed under § 14-227b(i)(2)(B). *Id.* Under Connecticut General Statutes § 14-227b(m) (2025), the interlock ignition requirement "shall cease to apply to such person upon any of the following conditions being met in the case of an arrest for a violation of section 14-227a ... (2) for which the person was convicted for such violation, alcohol was detected as an intoxicating

substance for such violation and such person has received an absolute pardon for each such conviction."

Finally, under Connecticut General Statutes § 14-36(e)(3) (2025), an applicant who has not renewed their driver's license within the two-year period after the license expiration date must take a driver's license test.

## II. FACTUAL BACKGROUND

The amended complaint contains the following relevant allegations, which are accepted as true for the purpose of this ruling. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On November 25, 2018, Plaintiff was arrested and charged with DUI, resulting in suspension of his driver's license. ECF No. 44 at 1. At the time of his arrest, Plaintiff was under twenty-one years of age. Case Details, Docket No. H12-M-MV18-0448274-S, ECF No. 44 at 7. Plaintiff alleges that he was assaulted by "law enforcement" and never provided with a "chemical test" as required under Connecticut statute. *Id.* at 1–2. He also claims that "footage"—presumably video footage of Plaintiff's arrest—had been deleted. *Id.* at 2. Plaintiff contends that he never received a mailed notice of suspension of his license and was unable to receive an administrative hearing. *Id.* at 3–4. Plaintiff's prosecution was terminated when the judge dismissed the DUI charge in March of 2022. *Id.* at 2, 5.

The Connecticut Superior Court docket related to Plaintiff's DUI arrest on November 25, 2018, shows that his case was disposed of on March 2, 2022, as a "Non-Disclosable Nolle."[3] *Id.*

---

[3] A *nolle prosequi* is a "unilateral act by a prosecutor, which ends the pending proceedings without an acquittal and without placing the defendant in jeopardy." *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (citation omitted). Under Connecticut law, a *nolle prosequi* terminates the prosecution, but the prosecuting authority is permitted to initiate a new action against the defendant within the statute of limitations. Conn. Prac. Book § 39-31 (2025). A *nolle prosequi* may not be entered if the accused objects and demands either a trial or dismissal. Conn. Gen. Stat. § 54-56b. Criminal charges that have been *nolled* are erased thirteen months after entry of the *nolle prosequi*. *Id.* § 54-142a(c)(1).

at 5–7.  Plaintiff alleges he sent notices of his "exoneration" to the DMV who "acknowledged" this, but that the DMV continued to "enforce[] the license suspension" after dismissal of Plaintiff's DUI.  ECF No. 44 at 2.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief

will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties.  It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest."  *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted).  But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss.  *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

## IV.    DISCUSSION

Plaintiff is proceeding on claims of:  (1) Fourteenth Amendment substantive due process violations, based on the DMV's alleged enforcement of license suspensions and requirements related to use of an interlock ignition device after a DUI charge is dismissed (Counts One and Three); (2) an Eighth Amendment Excessive Fines Clause violation based on Connecticut's driver's license restoration requirements (Count Two); and (3) a Fourteenth Amendment procedural due process violation challenging Connecticut's driver's license suspension procedures (Count Four).  ECF No. 44 at 2–3.  Defendants argue for dismissal on grounds of the statute of limitations, failure to appeal the suspension challenge, and failure to state a claim on the merits. For the reasons discussed below, the Court GRANTS Defendants' motion as to Counts One, Two, and Three, and DENIES Defendants' motion as to Count Four.

### A.  Counts One and Three:  Fourteenth Amendment Substantive Due Process

In Counts One and Three of his amended complaint, Plaintiff maintains that enforcing his license suspension and requiring the installation of an interlock ignition device and fee payment

after dismissal of his criminal DUI charges is unconstitutional and violates the Fourteenth Amendment Due Process Clause.  ECF No. 44 at 2–3.  Plaintiff claims these requirements are unreasonable and "prohibit[]" renewal.  *Id.* at 3.  The Court construes Counts One and Three of Plaintiff's complaint to assert substantive due process claims under the Fourteenth Amendment.

 "Substantive due process rights [under the Fourteenth Amendment] safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective."  *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (quotation marks and citation omitted).  To state a substantive due process claim for deprivation of a cognizable liberty or property interest, a plaintiff must allege facts indicating that defendants' "alleged acts . . . were arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised."  *Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d Cir. 2006) (citations and internal quotation marks omitted).  "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional."  *Tenenbaum v. Williams,* 193 F.3d 581, 600 (2d Cir. 1999) (cleaned up; citation omitted).

For purposes of this ruling only, the Court assumes—without deciding—that Plaintiff's interest in his restored driver's license is a protected interest under the Fourteenth Amendment. Nevertheless, Plaintiff has not alleged facts to support an inference that continuing to enforce the suspension of his license and the interlock ignition device requirement is so arbitrary or conscious-shocking as to violate the Fourteenth Amendment.

First, the Court notes that the Connecticut legislature enacted section 14-227b, setting forth the administrative procedure for license suspensions for motorists charged with DUI, to protect the public from potentially dangerous drivers who demonstrate reckless disregard for the safety of

others, consistent with due process.  *See Huang Do v. Comm'r of Motor Vehicles*, 330 Conn. 651, 679 (2019) (noting § 14-227b is meant to protect the public "by removing potentially dangerous drivers from the state's roadways with all dispatch compatible with due process") (citation omitted); *State v. Hickam*, 235 Conn. 614, 626 (1995) (noting legislature intended "to protect the public by temporarily revoking, prior to conviction, the operating privileges of those who have demonstrated a reckless disregard for the safety of others, while at the same time providing procedures to afford due process to those [who] come within its ambit."), *overruled in part on other grounds*, *State v. Crawford,* 257 Conn. 769, 779–80 & n. 7, (2001); *see also Hickey v. Comm'r of Motor Vehicles*, 170 Conn. 136, 139 (1976), *abrogated on other grounds by Tele Tech of Connecticut Corp. v. Dep't of Pub. Util. Control*, 270 Conn. 778 (2004) ("The legislature enacted the statutes governing the operation of motor vehicles . . . for the protection of the lives and property of the citizens of this state.").  Given that the state has set forth administrative procedures for restoration of an operating license—including payment of a fee and installation of an ignition interlock system—to help ensure public safety, the Court is hard-pressed to find that enforcing these requirements shocks the conscience, as would be required to state a substantive due process claim.  The ignition interlock device requirement, in particular, enables an individual subject to a license suspension to "make use of a license … rather than having to forfeit all use of a motor vehicle," recognizing the importance of motor vehicle transportation to one's daily life. *Short v. Ward*, No. CV07-4022631-S, 2008 WL 1734704, at *4 (Conn. Super. Ct. Mar. 25, 2008).

Additionally, the legislature provided an exemption from the interlock ignition device under § 14-227b(m) for individuals who receive an "absolute pardon" for an alcohol-related driving conviction.  But there is no similar exemption provided in § 14-227b for an individual subject to a driver's license suspension whose DUI charges were dismissed after entry of a *nolle*

*prosequi.* Under Connecticut law, a *nolle* is "a unilateral act by a prosecutor, which ends the pending proceedings without an acquittal," *Cislo v. City of Shelton,* 240 Conn. 590, 599 n. 9 (1997) (citation and internal quotation omitted), but "does not resolve the question of guilt or innocence." *Grasso v. Newbury*, No. 361369, 1990 WL 271096, at *1 (Ct. Super. Ct. Apr. 17, 1990); *see also In re Casey L.*, No. W10-CP-15017067-A, 2016 WL 5173638, at *2, n.2 (Conn. Super. Ct. Aug. 11, 2016). A *nolle* is not an "absolute pardon" as required under § 14-227b(m) for the exception to the interlock ignition device installation. Accordingly, Plaintiff's amended complaint fails to suggest that requiring his compliance with the ignition interlock device requirements after dismissal of his criminal DUI charge constitutes arbitrary treatment or abuse of discretion to support a Fourteenth Amendment violation.

Finally, the Court cannot find that payment of a $175 renewal fee rises to the level of conscience-shocking.

Thus, the Court dismisses Counts One and Three, raising Fourteenth Amendment substantive due process violations arising from Plaintiff's having to pay a renewal fee and install an ignition interlock device prior to restoration of his license.

B.  Count Two: Eighth Amendment Excessive Fines Clause

Next, Plaintiff alleges an Eighth Amendment excessive fines clause claim. He contends that the requirement to install an ignition interlock device, as well as "registering, insuring, and paying a restoration fee" to restore his license is unconstitutional. ECF No. 44 at 3. Given that the relevant statutes have a preventative and not a punitive purpose, Plaintiff's Eighth Amendment claim fails.

Courts employ a two-step process to determine "whether a financial penalty is excessive under the Eighth Amendment." *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016). First,

a court must "determine whether the Excessive Fines Clause applies at all"—*i.e.*, whether the penalty is, at least in part, "punitive." *Id.* at 108–09.  If so, the court must then "determine whether the challenged forfeiture is unconstitutionally excessive" as "grossly disproportional" to the gravity of the underlying offense. *Id.* at 109–10.

"The Excessive Fines Clause applies only to protect against 'punitive,' rather than 'remedial,' payments to the government." *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 589 n.2 (2d Cir. 2024) (citing *Viloski*, 814 F.3d at 109).  Thus, to determine whether the Excessive Fines Clause applies here, the Court must determine if Conn. Gen. Stat. §§ 14-50b, which imposes a $175 restoration fee, and 14-227b(i), which requires installation of the ignition interlock device as a prerequisite to restoration, imposes any payment for a punitive purpose. "[T]he Second Circuit has looked to two factors in order to infer whether an imposition or demand for payment is punishment:  (1) whether the demand for payment 'was imposed at the culmination of a criminal proceeding that required a conviction of the underlying felony and could not have been imposed upon an innocent party,' and (2) 'the nature of the statute that authorizes the demand for payment.'" *Beatty v. Gilman*, 718 F. Supp. 3d 166, 185 (D. Conn. 2024) (cleaned up) (quoting *United States v. An Antique Platter of Gold*, 184 F.3d 131, 139–40 (2d Cir. 1999)).

Here, neither factor commands a determination that the state statutes at issue serve a punitive purpose.  First, the interlock ignition requirement under section 14-227b(i) does not involve a "demand for payment" and thus is not considered a financial penalty, *id.*; although a driver may have to pay for installation of the device, that is simply an ancillary expense.  In any event, as described above, the interlock ignition installation requirement § 14-227b(i) applies to individuals who seek restoration of their driver's license but were never criminally convicted of the criminal DUI charges (such as Plaintiff).  Likewise, the statutory restoration fee of $175 dollars

applies regardless of whether the individual has been criminally convicted.  Thus, these requirements are not imposed at the culmination of a criminal proceeding, nor after a conviction. And the interlock ignition device requirement of § 14-227b(i) serves "to keep drunk drivers off the road and to provide some assurance that further incidents will not occur," not to punish.  *Macci v. Comm'r of Motor Vehicles*, No. HHB-CV-216065931-S, 2022 WL 294329, at *3 (Conn. Super. Ct. Jan. 14, 2022); *see also Hickam*, 235 Conn. at 624–25 ("the legislative history of § 14-227b reveals that a principal purpose for the enactment of the statute was to protect the public by removing potentially dangerous drivers from the state's roadways with all dispatch compatible with due process" and "any deterrent purpose . . . is incidental to its overall remedial purpose of removing from the highways those who have exhibited a propensity to drive while under the influence of alcohol").

Accordingly, the Court cannot conclude that the restoration fee or ignition interlock device requirement falls within the protection of the Eighth Amendment excessive fines clause.  Thus, the Court grants Defendants' motion to dismiss Plaintiff's Eighth Amendment claim in Count Two.

C.  Count Four:  Fourteenth Amendment Procedural Due Process Claim for License
    Suspension

Finally, the Court denies Defendants' motion to dismiss Count Four, his Fourteenth Amendment procedural due process claim.

In his amended complaint, Plaintiff alleges that he "never received the mailed suspension notice and was unable to receive an Administrative Hearing."  ECF No. 44 at 3–4.  He also argues that the statutory seven-day period from the date of the Notice is an "insufficient" period within which to contest a license suspension in an administrative hearing, violating his Fourteenth

Amendment due process rights. *Id.* at 3. The Court concludes that Defendants' arguments for dismissal of this claim fail.

A Fourteenth Amendment procedural due process claim has two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). To determine whether a constitutional violation has occurred, courts must consider the process provided by the state and determine whether that process was constitutionally adequate. *See Zinermon v. Burch,* 494 U.S. 113, 126 (1990). In general, under the due process clause "individuals must receive notice and opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993) (addressing the Fifth Amendment due process clause). Notice is reasonable if it is "calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

Defendants do not address the merits of Plaintiff's Fourteenth Amendment claim related to notice of his license suspension; rather, they seek dismissal on two procedural grounds: (1) the applicable statute of limitations; and (2) failure to exhaust state remedies. Neither argument is persuasive.

### 1. Statute of Limitations

Defendants maintain that Plaintiff's challenge to the initial suspension of his driver's license on December 25, 2018, is barred by the three-year statute of limitations relevant to claims brought under 42 U.S.C. § 1983. *See* ECF No. 49-1 at 4–7; *Lounsbury v. Jeffries*, 25 F.3d 131,

134 (2d Cir. 1994) (holding that the three-year statute of limitations from Conn. Gen. Stat. § 52-577 applies to § 1983 actions brought in Connecticut federal court). [4]

Ordinarily, the statute of limitations is an affirmative defense. *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). But "a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Id.* If a review of the complaint and other permissible documents reveals "that the claims are prima facie time-barred, the burden is on the plaintiff to 'plausibly alleg[e] that they fall within an exception to the applicable statute of limitations.'" *Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 611 (S.D.N.Y. 2021) (quoting *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 436 (S.D.N.Y. 2014)), *aff'd, Roeder v. J.P. Morgan Chase & Co.*, No. 21-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022) (summary order).

Although state law determines the statute of limitations for a Section 1983 claim, federal law governs when the statute of limitations begins to run. *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023). Under federal law, a Section 1983 claim does not accrue until the plaintiff "has a complete and present cause of action." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (internal quotation marks omitted); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007). The accrual analysis involves two steps. *Mallet v. New York State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 131 (2d Cir. 2025). First, the court must "'identify[] the specific constitutional right alleged to have been infringed.'" *Id.* (quoting *McDonough v. Smith*, 588 U.S. 109, 115 (2019) (internal quotation marks omitted)). Second, the Court considers when the plaintiff "knew or had reason to know of 'the injury which is the basis of his action,' *i.e.*, the alleged injury which—

---

[4] Defendants do not argue that Plaintiff's challenges to his continued suspension after dismissal of the DUI charge are barred by the statute of limitations. *See* ECF No. 49-1 at 4–5.

according to the plaintiff—amounts to an infringement of that constitutional right." *Id.* (citing *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)).

Defendants maintain that the relevant date for Plaintiff's Fourteenth Amendment procedural due process claim challenging his initial suspension is December 25, 2018, the date his license was suspended. ECF No. 49-1 at 5. If Defendants are correct, Plaintiff's Fourteenth Amendment procedural due process claim is likely untimely, given that he did not commence this action until August 15, 2024. But Plaintiff maintains that he "never received the mailed suspension notice and was unable to rec[ei]ve an Administrative Hearing." ECF No. 44 at 3-4.

As the Court noted in its ruling on Plaintiff's motions for temporary restraining order and preliminary injunction, the record reflects that Plaintiff was not newly aware when he filed this action that his license was suspended in December 2018 with the requirement for an ignition interlock device. Order, ECF No. 52 at 10. Nevertheless, the date that Plaintiff became aware of his license suspension remains outside of the four corners of the complaint, particularly given his allegation—which must be taken as true at this juncture—that he never received the mailed suspension notice.

Thus, Defendants' motion to dismiss Plaintiff's Fourteenth Amendment procedural due process claim on statute of limitations grounds must be denied, though Defendants may renew this ground for dismissal if discovery reveals that Plaintiff knew of the potential due process violation at an earlier date and failed to timely file this claim.

2. *State Remedies*

Defendants also maintain that Plaintiff's Fourteenth Amendment due process claim related to his initial suspension is barred because he never appealed from the DMV's final decision to suspend his license. ECF No. 49-1 at 6. But because section 1983 claims generally do not require exhaustion before being brought, Defendants' exhaustion argument similarly fails.

Defendants rely on Connecticut law, which provides that "a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding," except where the exhaustion of the "administrative remedy would be futile or inadequate" or injunctive relief is necessary to prevent "immediate and irreparable harm." *Levine* v. *Town of Sterling*, 300 Conn. 521, 528 (2011) (citation omitted); *see also* ECF No. 49-1 at 6–7.

But "[p]laintiffs suing under 42 U.S.C. § 1983 generally need not exhaust their administrative remedies." *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) (citing *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982)). "[E]xhaustion is necessary only where Congress specifically requires it, either explicitly or implicitly." *Id.*; *see also Doe v. Pfrommer,* 148 F.3d 73, 78 (2d Cir. 1998) ("*Patsy's* categorical statement that exhaustion is not required and the expansive view of federal courts in protecting constitutional rights allow plaintiffs to seek relief under § 1983 without first resorting to state administrative procedures."). Thus, Plaintiff need not have exhausted his state administrative (or judicial) remedies prior to bringing his section 1983 challenges to his licensing suspension.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's Fourteenth Amendment procedural due process claim arising from his initial suspension. In sum, Defendants' motion to dismiss is granted in part, as to Counts One, Two, and Three, and denied in part as to Count Four.

16

***

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

While Defendants' motion to dismiss was pending, Plaintiff again filed a motion for a preliminary injunction, seeking the immediate restoration of his Connecticut driver's license. ECF No. 83 at 1. Plaintiff's motion for a TRO and preliminary injunction seeks nearly identical relief to his previous motions for a TRO and a preliminary injunction, which the Court denied in full. *See* ECF No. 52. Plaintiff then moved for a motion to reconsider the Court's earlier order, which the Court also denied. ECF No. 64.

Plaintiff's current motion for a TRO and preliminary injunction seeks relief based on the likelihood of success of his Fourteenth Amendment due process claim. *See* ECF No. 83 at 3. Because the Court has dismissed Plaintiff's Fourteenth Amendment substantive due process claim, it analyzes only Plaintiff's procedural due process claim in Count Four for purposes of his request for injunctive relief.[5] Because Plaintiff has not demonstrated a likelihood of success or irreparable harm as to his procedural due process claim, Plaintiff's motion for a TRO and a preliminary injunction is denied.

## I.    FACTUAL BACKGROUND

As the facts relevant to Plaintiff's TRO and preliminary injunction motion are the same as those relevant to Plaintiff's motion to dismiss, the Court largely relies on the facts outlined in the motion to dismiss portion of its ruling.

---

[5] Plaintiff's motion for a preliminary injunction does not reference his Eighth Amendment claim. As that claim has been dismissed, the Court does not consider it further here.

## II.    LEGAL STANDARD

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The same standard applies for analyzing a motion for a temporary restraining order and a motion for a preliminary injunction.  *Stoneway Cap. Corp. v. Siemens Energy Inc*., No. 19 Civ. 11355 (GBD) (SLC), 2020 WL 764457, at *1 (S.D.N.Y. Feb. 14, 2020).  A movant must establish "(1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction."  *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (cleaned up).

In cases where a plaintiff seeks a mandatory injunction rather than a prohibitory one— requiring the defendant to take some action, rather than refrain from taking some action—"the likelihood-of-success and irreparable-harm requirements become more demanding still." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024).  In those cases, the plaintiff must "show a *clear or substantial* likelihood of success on the merits and make a *strong showing* of irreparable harm."  *Id.* (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)).

A federal court may, but is not required to, hold a hearing on a motion for preliminary injunction, but hearings are not required in all cases. *See Drywall Tapers & Pointers of Greater*

*N.Y., Loc. 1974 of I.B.P.A.T., AFL–CIO v. Loc. 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 954 F.2d 69, 76–77 (2d Cir. 1992). "[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." *Md. Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 984 (2d Cir. 1997). If the record before the court demonstrates no factual dispute to be resolved by an evidentiary hearing, the court may grant or deny the motion without hearing oral testimony. *Lopez v. McEwan*, No. 3:08-CV-678 (JCH), 2009 WL 179815, at *1 (D. Conn. Jan. 23, 2009).

## III.    DISCUSSION

After review of the record, the Court concludes that there are no material facts in dispute with respect to Plaintiff's motion for a TRO and a preliminary injunction and that neither oral testimony nor argument would assist in the Court's understanding of the factual record or the relevant legal principles. *See Stiggle v. Arnone*, No. 3:13-CV-00238 (JAM), 2014 WL 4230919, at *1 n.3 (D. Conn. Aug. 26, 2014). Accordingly, the Court resolves Plaintiff's motion for a TRO and a preliminary injunction without a hearing.

The Court agrees with Defendants that Plaintiff has not demonstrated either that (1) he will be subject to irreparable harm if immediate license restoration is not afforded to him or (2) a likelihood that he can prevail on the merits of his Fourteenth Amendment procedural due process claim. Nor does issuance of the requested injunctive relief serve the public's interest. The Court therefore denies Plaintiff's motion.

### A.    Irreparable Harm

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80

(2d Cir. 2024) (citation omitted); *see also Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (*per curiam*) (noting that "[i]n the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied").  To satisfy the irreparable harm requirement, Plaintiff must demonstrate that he "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *State Farm*, 120 F.4th at 80 (citation omitted).  And "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended" are not sufficient to establish irreparable harm. *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  Furthermore, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Id.* (citing *Sampson*, 415 U.S. at 90).

Additionally, a party's delay in seeking injunctive relief may defeat any presumption of irreparable injury.  *See Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005).  As the Second Circuit has noted, preliminary injunctive relief is "generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights.  Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985).  Thus, a party's "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury. *Id.* at 277; *see also Goldstein v. Hochul*, No. 22-CV-8300 (VSB), 2022 WL 20305832, at *2 (S.D.N.Y. Oct. 3, 2022) (assessing delay in case alleging violation of constitutional rights).

Here, Plaintiff has not demonstrated irreparable harm.  Plaintiff complains that he was unable to install the ignition interlock device within the two-year time period that ended in May

of 2025, in part because he was incarcerated for the duration of the two-year period. ECF No. 83 at 2. Plaintiff alleges he is now permanently "barred from regaining lawful driving privileges." *Id*. But this does not amount to irreparable harm.

Plaintiff is not without a remedy for his license having expired after the two-year renewal period. Under Connecticut General Statutes § 14-36(e)(3), Plaintiff may renew his license after its expiration by taking a driving test. His lack of a license is, therefore, reparable. And under § 14-227b(i), Plaintiff will lawfully remain subject to the mandatory ignition interlock requirement.

Thus, Plaintiff has demonstrated at most that he may be injured as to his time, energy, and monetary interests. Neither Plaintiff's inability to renew his license prior to its expiration in May of 2025 nor the requirement for him to install the ignition interlock system prior to renewal constitute an irreparable injury to support this Court granting him the drastic remedy of preliminary injunctive relief.

B. <u>Likelihood of Success on the Merits</u>

Plaintiff also has not made a clear showing that he has a likelihood to prevail on the merits of his surviving Fourteenth Amendment procedural due process claim for the adequacy of the notice period. The Court incorporates by reference the legal standard for this claim detailed above.

Here, as described above, the State of Connecticut has provided a statutory scheme to afford due process for suspending a driver's license due to an arrest for a DUI offense. *See Huang Do*, 330 Conn. at 679. Under Connecticut law, Plaintiff had an opportunity for an administrative hearing under § 14-227b(g) and to take an appeal under § 4-183 for judicial review of the DMV licensing suspension. *See Hickam*, 235 Conn. at 627 ("[T]he legislature has simply provided to a driver who has been arrested the opportunity to contest the loss of his or her license, while retaining

operating privileges until a final determination on an extended suspension can be made after a hearing.  The short period of retention of driving privileges pending a hearing was obviously intended to eliminate any possible due process concerns").

While the date Plaintiff received notice of the hearing is not clear from the record, Plaintiff's motion for a preliminary injunction argues that his inability to participate in a hearing due to his "incarceration" is what makes "the process constitutionally inadequate."  ECF No. 83 at 3.  Plaintiff does not point to any case law—nor has this Court found any—that suggests incarcerated individuals cannot request or participate in Connecticut's statutory procedural scheme—providing for notice, a hearing, and an opportunity to appeal.  Further, to the extent Plaintiff argues that his failure to receive the notice generally is a violation of due process, he has not sustained his heavy burden of showing that he has a clear likelihood of success on the merits of his due process claim.  Accordingly, the Court concludes Plaintiff is not entitled to injunctive relief related to an alleged Fourteenth Amendment procedural due process violation.

C.  Balance of the Hardships and the Public Interest

Finally, in light of the discussion above, it is clear the balance of the hardships and public interest do not favor granting Plaintiff's motion for injunctive relief.  "It is well established that states have 'substantial, indeed compelling, governmental interests in public safety and crime prevention.'"  *Mintz v. Chiumento*, 724 F. Supp. 3d 40, 66 (N.D.N.Y. 2024) (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 261 (2d Cir. 2015)).  As previously discussed, the Connecticut legislature enacted § 14-227b to protect the public from drivers who demonstrate reckless disregard for the safety of others, "while at the same time providing procedures to afford due process to those that come within its ambit."  *See Hickam*, 235 Conn. at 626; *Huang Do*, 330 Conn. at 679 (noting § 14-227b is meant to protect the public "by removing potentially dangerous

drivers from the state's roadways with all dispatch compatible with due process" (quoting *Fishbein v. Kozlowski*, 252 Conn. 38, 48–49 (1999))).

Thus, Plaintiff's injunctive requests, if granted, would present a disservice to the public interest by undermining the state's efforts to protect the public from people who drive while intoxicated. By contrast, Plaintiff has not demonstrated that he will be subject to any imminent irreparable harm absent the granting of his motion. Accordingly, the Court DENIES Plaintiff's motion for a TRO and a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 49, is GRANTED in part as to Counts One, Two, and Three of Plaintiff's amended complaint and DENIED in part as to Count Four. Plaintiff's motion for a TRO and a preliminary injunction, ECF No. 83, is DENIED.

**SO ORDERED** at Hartford, Connecticut, this 2nd day of March, 2026.


  */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE